# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JOHN TOWNSEND,

    Plaintiff,

v.                                                Case No. 10-C-347

SARAH COOPER, WILLIAM SWIEKATOWSKI,
MARK ZIMONICK, DR. BREEN, DR. HAMILTON,
WARDEN POLLARD, DEPUTY WARDEN BAENEN,
PETER ERICKSON, JOHN DOE 1 - DOC SECRETARY,
JOHN DOE 2 - DOC DEPUTY SECRETARY, and
JOHN DOE 3 - DOC SECURITY CHIEF,

    Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR
## LEAVE TO PROCEED IN FORMA PAUPERIS (DOC. #2)

        John Townsend, a Wisconsin state prisoner, initiated this pro se action under 42 U.S.C. § 1983, and is seeking to proceed *in forma pauperis*. The initial partial filing fee has been paid and now, the court must screen the complaints which seeks relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court is required to dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

        A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless

legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at

1950. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

According to the complaint, the plaintiff was incarcerated at the Green Bay Correctional Institution (GBCI) at all times relevant. The defendants are: Sarah Cooper, Segregation Programs Supervisor; William Swiekatowski, Segregation Security Supervisor; Mark Zimonick, Segregation Social Worker; Dr. Breen, Psychologist; Dr. Hamilton, Psychologist; William Pollard, Warden; Michael Baenen, Deputy Warden; Peter Erickson, Security Director; John Doe 1, Secretary of the Wisconsin Department of Corrections (DOC); John Doe 2, Deputy Secretary of the DOC; and John Doe 3, DOC Security Chief.

The plaintiff alleges that between January and June 2005, he was in segregation at GBCI. During that time, he contends that he had depression symptoms and suicidal ideation, and began to contemplate suicide and to make suicidal gestures that

3

resulted in several placements on observation. The plaintiff was placed on observation, during which he would go for days without food.[1] Rather than help or treat the plaintiff, defendants Dr. Hamilton and Dr. Breen would merely leave him in observation status – often punitively – during which the plaintiff was left "stark naked," in a cold cell with no property. (Compl. ¶ 18.) According to the plaintiff, Dr. Breen would falsify the plaintiff's records by stating that he was stable enough to be removed from observation so that he would be released from observation early so as to, 1) relieve staff from the duty of frequent fifteen minute checks; 2) ease the doctor's duty and work load; and 3) deprive the plaintiff of the due process hearing he is entitled to under state law.

        The plaintiff further asserts that on June 23, 2005, he spoke to defendant Cooper and refused to return to his cell. Defendant Swiekatowski placed the plaintiff on "Controlled Segregation." Shortly thereafter, defendants Cooper and Dr. Breen informed the plaintiff that he was being placed on a "Behavior Plan." For the next few months, the plaintiff "was entirely naked, without clothing, bedding, linen, hygiene products, showered so infrequently as to be as if he had never done so, force[d] to wipe himself with his bare hands after facility, fed unappetizing "bag meals" where he was required to eat foods such as jello, oatmeal, mashed potatoes, etc. with his dirty hands, and often so cold that he would walk about he cell for entire shifts non-stop to generate heat." (Compl. ¶ 24.) In November 2005, the plaintiff was removed from the Behavior Plan but he attempted suicide and the program was immediately reactivated. While on the Behavior Plan, the plaintiff informed defendants Cooper, Swiekatowski, Zimonick, Breen, Hamilton, and

---

[1] The complaint does not indicate why the plaintiff went without food for days at a time.

Ericksen, who were the original activators of the Plan, of the deprivations he experienced, but they did not act to correct them. Defendants Pollard, Baenen, and John Does 1-3 were aware of GBCI staff employment of the program, of the deprivations it caused the plaintiff, and that no due process was given before, during or after activation of the Behavior Plan.

The plaintiff claims that defendants Cooper, Swiekatowski, Zimonick, Breen, Hamilton, and Erickson subjected him to the Behavior Plan without due process; Pollard, Baenen, and John Does 1-3 knew of the employment of this program without due process; Cooper, Swiekatowski, Zimonick, Breen, Hamilton, and Ericksen knew of the conditions of plaintiff's confinement in the Behavior Plan and actually sanctioned them; Pollard and Baenen were aware of the plaintiff's conditions and failed to remedy them; John Does 1-3 knew prison officials used the Behavior Plan to effect cruel and unusual punishment and failed to limit staff use of this tool or to create any policies regulating its use; Breen and Hamilton denied the plaintiff adequate mental health treatment, and Breen actively manipulated his medical/clinical files to prevent him from receiving due process and mental health treatment at the state mental health facility.

The plaintiff seeks a jury trial and a declaration that the actions of all defendants violated his rights under the Constitution; an award of compensatory and punitive damages in an amount to be computed by future counsel; an award of all costs, fees, and interest.

The plaintiff's allegations of the conditions on the Behavior Plan are similar to those in *Gillis v. Litscher*, 468 F.3d 488 (7th Cir. 2006). In that case, the inmate was placed in a punitive "Behavioral Modification Program" for violating a prison rule requiring him to sleep with his head toward the back of his cell. *Id.* at 489-90. For the first five days

of the program, the inmate was deprived of human contact, left naked with no mattress or other bedding in a cell so cold he paced fourteen hours each day to stay warm, fed only a ground-up block of food, and denied access to toilet paper. *Id.* at 490-91. The following week he was allowed some clothing and regular meals but still denied a mattress or bedding, and he was not allowed to shower until the ninth day of the program. *Id.* at 491. The inmate could not return to normal conditions simply by behaving himself; rather, once the program was initiated, he was required to complete the entire course of punishment. *Id.* at 494-95. The Seventh Circuit Court of Appeals concluded that this evidence was sufficient to permit the inmate to survive summary judgment on Eighth Amendment conditions of confinement and Fourteenth Amendment due process claims. *Id.* at 493-95; *but see, Bowers v. Pollard*, 345 Fed. Appx. 191, 196-97 (7th Cir. 2009) (unpublished) (rejecting inmate's comparison to *Gillis* where inmate had a history of violent and self-abusive behavior, including a tendency to insert objects into his penis, and was put on behavioral action plan which restricted his property, limited his clothing, and imposed five-point restraints on several occasions).

At this stage of the proceedings, the plaintiff may proceed on claims that the conditions he was subjected to as part of a Behavior Plan at the GBCI violated his rights under the Eighth Amendment and that placement on the Plan was without due process in violation of the Fourteenth Amendment. In addition, he may proceed on a claim of Eighth Amendment deliberate indifference to mental health by Drs. Breen and Hamilton. *See Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

**IT IS ORDERED** that the plaintiff's motion for leave to proceed *in forma pauperis* (Docket #2) is **GRANTED**.

**IT IS FURTHER ORDERED** pursuant to an informal service agreement between the Attorney General and this court, that copies of plaintiff's complaint and this order be sent to the Attorney General for service on the state defendants.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from the plaintiff's prison trust account the $348.33 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ALSO ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined.

**IT IS FURTHER ORDERED** that the plaintiff shall submit all correspondence and legal material to:

> Honorable Charles N. Clevert
> % Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

The plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). The plaintiff should also retain a personal copy of each document. If the plaintiff does not have access to a photocopy machine, he may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

The plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 20th day of September, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.

C. N. CLEVERT, JR.
Chief U.S. District Judge